**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**DANNY DYKES, Individually and on**                                   **PLAINTIFF**
**behalf of the Estate and Wrongful Death**
**Beneficiaries of James A. Dykes, Deceased**

**V.**                                                      **NO. 4:15-CV-00076-DMB-JMV**

**CLEVELAND NURSING &**
**REHABILITATION CENTER; and**
**JOHN AND JANE DOE I–X**                                      **DEFENDANTS**

## ORDER

This medical malpractice action is before the Court on: (1) Cleveland Nursing and Rehabilitation Center, LLC's "Motion to Amend the Court's February 3, 2016 Order," Doc. #26; (2) Danny Dykes' motion to strike the defendant's motion to amend, Doc. #37; and (3) Dykes' motion to extend the deadline to respond to the motion to amend, Doc. #38. For the reasons below, the motion to strike and the motion to extend will be denied; and the motion to amend, which is argued as a motion for reconsideration, will be granted in part and denied in part.

**I**
## Procedural History

On April 20, 2015, Danny Dykes filed a complaint in the Circuit Court of Bolivar County, Mississippi, "individually and on behalf of the Estate and wrongful death beneficiaries of James A. Dykes, deceased." Doc. #2. In his complaint, Danny alleges that James A. Dykes[1] died as a result of negligence while a patient at a nursing home facility operated by Cleveland Nursing & Rehabilitation Center, LLC ("Cleveland Nursing"). *Id.* at ¶¶ 7–8, 12, 20.

---

[1] The nature of the relationship between Danny Dykes and James Dykes is not alleged in the complaint or apparent from the evidentiary record. To avoid confusion, the Court will refer to the Dykes by their first names.

On June 11, 2015, Cleveland Nursing removed the state action to this Court on the grounds of diversity jurisdiction. Doc. #1 at ¶ 4. One week later, on June 18, 2015, Cleveland Nursing filed a motion to compel arbitration. Doc. #4. In the memorandum brief accompanying its motion, Cleveland Nursing argued that Billy Dykes signed an enforceable arbitration agreement as James' healthcare surrogate, and that this action falls within the scope of the agreement. Doc. #5. As support for this argument, Cleveland Nursing submitted a note from James' treating physician, dated approximately a month after James' admission, stating that James was incapacitated at the time of admission. Doc. #4-2. Danny responded within the time allowed, Doc. #8, and Cleveland Nursing filed a timely reply, Doc. #10.

On February 3, 2016, this Court entered an order denying the motion to compel arbitration. Doc. #13. In denying the motion, the Court held that, under Mississippi law, "in order for one to act as a health care surrogate, there must first be a determination of a lack of capacity by a patient's primary physician," and that because James' primary physician had not made a determination of incapacity at the time Billy signed the arbitration agreement, Billy could not have acted as James' healthcare surrogate. *Id*. at 11(emphasis omitted).

Approximately three months later, on May 6, 2016, Cleveland Nursing filed a motion titled as a "Motion to Amend," Doc. #26, but argued as a Rule 60(b) motion for reconsideration of the order denying the motion to compel, Doc. #27 at 3. On May 25, 2016, Danny filed a motion to extend the deadline to respond to the motion for reconsideration. Doc. #29. This Court denied the motion to extend because it "offer[ed] neither a reason for missing the original deadline nor a justification for the requested extension." Doc. #30 (footnote omitted).

On July 27, 2016, United States Magistrate Judge Jane M. Virden, acting on Cleveland Nursing's motion, stayed discovery in this matter pending a ruling on the motion for

reconsideration.  Doc. #36.  On August 10, 2016, Danny filed a motion to strike portions of the motion for reconsideration.  Doc. #37.  Six days later, on August 16, 2016, Danny filed a second motion to extend the deadline to respond to the motion for reconsideration.[2]  Doc. #38. Cleveland Nursing did not respond to either of Danny's motions.

## II
## Danny's Motions

As an initial matter, the Court must address Danny's two procedural motions – the motion to strike portions of the motion for reconsideration, and the motion to extend the deadline to respond to the motion for reconsideration.

### A.  Motion to Strike

In his motion to strike, Danny argues that a party may not use a Rule 60(b) motion to argue that a court misinterpreted the law, and asks the Court to "strike ... all portions of Defendant's Motion to Amend which argues that this Court misinterpreted the law."  Doc. #37 at ¶¶ 9, 13.  Danny cites no authority for the proposition that a court should strike (rather than deny) portions of a Rule 60(b) motion because the motion contains improper arguments. Furthermore, as explained below, the motion for reconsideration should be analyzed under a Rule 54(b) standard rather than a Rule 60(b) standard.  Accordingly, the motion to strike will be denied.

### B.  Motion for Extension

In requesting a post-deadline three-month extension to file a response to Cleveland Nursing's motion for reconsideration, Danny, stating that "Fed. R. Civ. P. 6(b)(1)(B) provides

---

[2] The filing is titled, "Motion for Leave to File Response in Opposition to Defendant's Motion to Amend."

3

that the court may extend a deadline after its expiration when the party failed to act because of excusable neglect," argues:

> Plaintiffs inadvertently neglected to file their response to the Motion to Amend by the May 23, 2016 deadline due to a miscommunication between Plaintiffs' attorneys regarding who would be drafting the response. Plaintiffs' counsel did not knowingly ignore the May 23, 2016 deadline; it was an oversight resulting from staffing miscommunications.

Doc. #38 at ¶¶ 7–8.

Rule 6(b) of the Federal Rules of Civil Procedure provides, in relevant part, that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect." Relevant factors to the excusable neglect inquiry include "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 n.8 (5th Cir. 2006) (alterations in original).

Insofar as Cleveland Nursing has identified no prejudice from the requested extension (since it did not respond to the motion), the first factor (absence of prejudice) weighs in favor of excusable neglect. As for the second factor, the three-month delay in seeking an extension after the deadline passed weighs against a finding of excusable neglect. Indeed, such a delay would, in turn, delay a ruling on the motion by re-opening the briefing period without sufficient justification. *See United States v. Aguirre*, 476 F. App'x 333, 334–35 (5th Cir. 2012) ("The length of Mrs. Aguirre's delay also weighed against a finding of excusable neglect because her petition was filed nearly four months after she was served with notice and over two months after the deadline for filing her petition."). Next, "a wholly unexplained miscommunication between

counsel does not satisfy any part of [the excusable neglect] test." *Flores v. Sec'y of Navy*, 51 F.3d 1044, 1995 WL 153205, at *3 (5th Cir. Mar. 27, 1995) (unpublished). Accordingly, the third and fourth factors also weigh against a finding of excusable neglect. Upon consideration of the relevant factors, the Court concludes that Danny has not shown excusable neglect for missing the response deadline and that, therefore, his motion for extension will be denied.[3]

### III
### Motion for Reconsideration

As explained above, Cleveland Nursing seeks reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure. However where "a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, Federal Rule of Civil Procedure 54(b) controls." *S. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 921 F.Supp.2d 548, 564 (E.D. La. 2013). Thus, where a party seeks reconsideration of a non-final order, the proper course is to treat the motion as brought under Rule 54(b). *See Lucas v. District of Columbia*, __ F.Supp.3d __, No. 13-00143, 2016 WL 5845612, at *2 (D.D.C. Oct. 5, 2016) ("[I]nasmuch as plaintiffs seek reconsideration of a non-final order, Federal Rule of Civil Procedure 54(b) governs, not Rule 60(b)."); *see also Helena Labs. Corp. v. Alpha Scientific Corp.*, 483 F.Supp.2d 538, 538 n.1 (E.D. Tex. 2007) ("Alpha's motion was improperly filed under Fed.R.Civ.P. 59(e) because no final judgment has been entered. However, it is undisputed that the court has discretion to treat the motion as one for reconsideration under Fed.R.Civ.P. 54(b).").

---

[3] In his motion, Danny argues that "[e]ven where a party fails to satisfy the excusable neglect standard, a court may still, in the interests of justice, consider an untimely response." Doc. #38 at ¶ 7 (citing *Chadwell v. Nueces Cty.*, No. C-06-199, 2006 WL 3053487, at *2 (S.D. Tex. Oct. 26, 2006)). Even assuming "the interests of justice" qualify as an unwritten exception to Rule 6(b)'s excusable neglect standard, Danny's conclusory argument that consideration of his untimely response would "serve only to further the fair and just administration of the case and assist the Court in its analysis of Defendant's Motion to Amend," *id*. at ¶ 9, does not state sufficient grounds to discard the excusable neglect standard. A contrary holding would eviscerate the enforceability of response deadlines.

There is no dispute that the order denying Cleveland Nursing's motion to compel arbitration was a non-final order inasmuch as it did not adjudicate all of the claims between the parties. *See Alcoa v. Beazer*, 124 F.3d 551, 562 (3d Cir. 1997) ("[A]n order granting or denying a motion to compel arbitration is a final decision only if such an order was the full relief the parties sought."); *Savetsky v. Pre-Paid Legal Servs., Inc.*, No. 14-03514, 2015 WL 1519066, at *2 (N.D. Cal. Apr. 3, 2015) ("[T]he Court's order denying the motion to compel arbitration is clearly ancillary to Mr. Savetsky's California consumer law allegations against LegalShield. Because Rule 60(b) plainly only applies to final judgments or orders, a Rule 60(b) motion is clearly improper."). Accordingly, the Court will treat Cleveland Nursing's motion for reconsideration as a motion brought under Rule 54(b).

Under Rule 54(b):

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (alteration added). "Although the source of the court's authority to revise or amend an order or judgment is different for interlocutory orders than for final orders or judgments, many of the same policy considerations apply both to motions for reconsideration under Rule 54(b) and to motions for reconsideration under Rule 59(e). Accordingly, district courts ... frequently apply the same standards to the two." *eTool Dev., Inc. v. Nat'l Semiconductor Corp.*, 881 F.Supp.2d 745, 748 (E.D. Tex. 2012) (collecting cases).

Under Fifth Circuit jurisprudence:

> A Rule 59(e) motion "calls into question the correctness of a judgment." This Court has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Rather, Rule 59(e) "serve[s] the narrow purpose of allowing a

party to correct manifest errors of law or fact or to present newly discovered evidence." Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.

*Templet v. HydroChem, Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (internal citations omitted).

"A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (internal quotation marks omitted). "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Id.* Additionally, "a trial court is free to reconsider and reverse interlocutory orders for any reason it deems sufficient, even in the absence of new evidence or an intervening change or in clarification of the new law." *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727–28 (5th Cir. 2012).

In its motion, Cleveland Nursing argues that: (1) under *Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169 (5th Cir. 2016), a case decided after this Court denied the motion to compel arbitration, Billy had actual authority to bind James; and (2) this Court misapplied Mississippi law in concluding that a determination of incapacity is a precondition to acting as a healthcare surrogate. *See* Doc. #27.

## A.  *Gross v. GGNSC Southaven*

Cleveland Nursing concedes that it did not raise the issue of actual authority (as distinct from healthcare surrogacy) in its motion to compel because it "was faced with two separate opinions from this Court holding that a formal legal device was required to confer actual authority on the representative of a nursing home resident." Doc. #27 at 3. It argues however

that "*Gross* ... substantially changed the law regarding the enforceability of nursing home arbitration agreements ...." *Id.*

Courts have held that, under Rule 59(e), the changed "controlling law at issue must be precedential." *McNeese Photo., L.L.C. v. Access Midstream Partners, L.P.*, 2016 WL 1312630, at *3 (W.D. Okla. Apr. 4, 2016) (collecting cases) (internal quotation marks omitted). Accordingly, insofar as *Gross* merely reversed district court opinions, it does not represent an intervening change in controlling law, as required for Rule 59(e) relief. Nevertheless, as explained above, a district court has discretion to reconsider its non-final order in the absence of an intervening change in controlling law. To the extent *Gross* represents a change in this Court's treatment of actual authority, the Court deems it appropriate to allow Cleveland Nursing an opportunity to address the issue of Billy's actual authority to bind Jimmy.[4]

### B. Healthcare Surrogacy

In its February 3, 2016, order, this Court, relying on *Adams Community Care Center, LLC v. Reed*, 37 So.3d 1155 (Miss. 2010), and *Hattiesburg Health & Rehab Center, LLC v. Brown*, held:

> courts must now employ "a strict interpretation of the surrogate statutes." *Hattiesburg Health*, 176 So.3d at 23. Under this approach, "in order for one to act as a health care surrogate, there must *first* be a determination of a lack of capacity by a patient's primary physician." *Reed*, 37 So.3d at 1159.

Doc. #13 at 11 (internal footnote omitted, emphasis in original).

In its motion for reconsideration, Cleveland Nursing argues that "[n]either *Hattiesburg Health* nor *Reed* addressed the issue before the court: whether a physician's determination of incapacity signed after admission – which explicitly states the resident lacked capacity at the

---

[4] The motion for reconsideration asks this Court to reverse itself and compel arbitration based on actual authority. The Court declines to do so in the absence of a fully briefed and argued renewed motion to compel arbitration.

time of admission – complies with the surrogate statutes." Doc. #27 at 6. Cleveland Nursing is correct that neither case explicitly dealt with the issue presented here. However, as cited, both cases stand for the proposition that the Uniform Health-Care Decisions Act ("UHCDA"), the law which governs healthcare surrogates in Mississippi, must be strictly construed.

Under the UHCDA, "[a] surrogate may make a health-care decision for a patient who is an adult … *if the patient has been determined by the primary physician to lack capacity* and no agent or guardian has been appointed or the agent or guardian is not reasonably available." Miss. Code Ann. § 41-41-211(1) (emphasis added). The corollary of this plain language is that a surrogate may *not* make a healthcare decision if the patient has *not* been determined by the primary physician to lack capacity. There is no question that, at the time Billy signed the arbitration agreement, James had not been determined by his primary physician to lack capacity.[5] Therefore, even if the arbitration agreement could be deemed a healthcare decision within the meaning of the UHCDA, Billy had no authority to sign it. For this reason, the Court will not reconsider its decision regarding Billy's status as James' healthcare surrogate.

### IV
### Conclusion

For the reasons above:

1.     Danny's motion to strike [37] is **DENIED**;

2.     Danny's motion for extension [38] is **DENIED**; and

3.     Cleveland Nursing's motion for reconsideration [26] is **GRANTED in Part and DENIED in Part**. The motion is DENIED to the extent it seeks reconsideration of this Court's February 3, 2016, decision that Billy was not acting as James' healthcare surrogate when he

---

[5] Of course, a surrogate, upon receiving a valid determination of incapacity, would have authority to ratify the arbitration agreement, if such ratification were required for continued care.

signed the arbitration agreement.  The motion is GRANTED to the extent it asks the Court to consider the issue of actual authority, as stated in *Gross*.  Accordingly, Cleveland Nursing is **GRANTED** leave to file a renewed motion to compel arbitration, which (a) shall address only the issue of actual authority under *Gross*, and (b) must be filed within fourteen (14) days of the issuance of this order.

 **SO ORDERED**, this 31st day of October, 2016.

**/s/ Debra M. Brown**     
**UNITED STATES DISTRICT JUDGE**
