IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DANNY DYKES, Individually and on**                                                        **PLAINTIFF**
**behalf of the Estate and Wrongful Death**
**Beneficiaries of James A. Dykes, Deceased**

**V.**                                                        **NO. 4:15-CV-00076-DMB-JMV**

**CLEVELAND NURSING &**
**REHABILITATION CENTER; and**
**JOHN AND JANE DOE I–X**                                                                **DEFENDANTS**

## ORDER

This medical malpractice action is before the Court on the renewed motion to compel arbitration of Cleveland Nursing & Rehabilitation Center. Doc. #40.

### I
### Procedural History

On April 20, 2015, Danny Dykes filed a complaint in the Circuit Court of Bolivar County, Mississippi, "individually and on behalf of the Estate and wrongful death beneficiaries of James A. Dykes, deceased." Doc. #2. In his complaint, Danny alleges that James A. Dykes[1] died as a result of negligence while a patient at a nursing home facility operated by Cleveland Nursing & Rehabilitation Center, LLC ("Cleveland Nursing"). *Id.* at ¶¶ 7–8, 12, 20.

On June 11, 2015, Cleveland Nursing removed the state action to this Court on the grounds of diversity jurisdiction. Doc. #1 at ¶ 4. One week later, on June 18, 2015, Cleveland Nursing filed a motion to compel arbitration. Doc. #4. In the memorandum brief accompanying its motion, Cleveland Nursing argued that at the time of James' admission to the Cleveland

---

[1] The nature of the relationship between Danny Dykes and James Dykes is not alleged in the complaint or apparent from the evidentiary record. To avoid confusion, the Court will refer to the Dykeses by their first names.

Nursing facility, Billy Dykes, James' son, signed an enforceable arbitration agreement as James' healthcare surrogate and that this action falls within the scope of the agreement. Doc. #5. As support for this argument, Cleveland Nursing submitted a note from James' treating physician, dated approximately a month after James' admission, stating that James was incapacitated at the time of admission. Doc. #4-2. Danny responded to the motion to compel arbitration within the time allowed, Doc. #8, and Cleveland Nursing filed a timely reply, Doc. #10.

On February 3, 2016, this Court entered an order denying the motion to compel arbitration. Doc. #13. In denying the motion, the Court held that under Mississippi law, "in order for one to act as a health care surrogate, there must first be a determination of a lack of capacity by a patient's primary physician" and that because James' primary physician had not made a determination of incapacity at the time Billy signed the arbitration agreement, Billy could not have acted as James' healthcare surrogate. *Id*. at 11 (emphasis omitted).

Approximately three months later, on May 6, 2016, Cleveland Nursing filed a motion titled as a "Motion to Amend," Doc. #26, but argued as a Rule 60(b) motion for reconsideration of the order denying the motion to compel, Doc. #27 at 3. On October 31, 2016, this Court entered an order granting in part and denying in part the motion for reconsideration. Doc. #39. The order denied reconsideration as to the holding regarding Billy's status as a healthcare surrogate but granted Cleveland Nursing leave to file a renewed motion to compel arbitration addressing the issue of Billy's actual authority to execute the arbitration agreement. *Id*. at 9–10.

Cleveland Nursing filed a renewed motion to compel arbitration on November 14, 2016. Doc. #40. The memorandum accompanying the motion requests an evidentiary hearing on the issue of the validity of the arbitration agreement. Doc. #41. Danny responded in opposition on November 28, 2016. Doc. #43. Cleveland Nursing replied on December 5, 2016. Doc. #45.

On May 2, 2017, this Court entered an order granting a period of arbitration-related discovery and leave to file supplemental briefs addressing such discovery. Doc. #47. On June 26, 2017, Cleveland Nursing, at the close of the discovery period, filed a supplemental memorandum in support of its renewed motion. Doc. #54. Danny filed a supplemental memorandum on July 10, 2017. Doc. #55.

## II
## Standard of Review

The Federal Arbitration Act ("FAA") "permits an aggrieved party to file a motion to compel arbitration when an opposing party has failed, neglected, or refused to comply with an arbitration agreement." *Am. Bankers Ins. Co. of Fl. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2005) (internal quotation marks omitted) (citing 9 U.S.C. § 4). "On a motion to compel arbitration by an aggrieved party, the Court shall decide the issue of arbitrability summarily." *Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 914 (N.D. Tex. 2000) (citing 9 U.S.C. § 4). Thus, "evidence on the motion may be received by the Court." *Id*.

The FAA directs that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, … the court shall hear and determine such issue." 9 U.S.C. § 4. Where a jury trial has not been demanded, a district court may satisfy its duty under § 4 by holding an evidentiary hearing. *See Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 365 (5th Cir. 2015). However, the Fifth Circuit has observed that, notwithstanding § 4's language, a "district court is not required to conduct a hearing on this threshold determination." *Armstrong v. Assocs. Intern. Holdings Corp.*, 242 F. App'x 955, 959 (5th Cir. 2007) (citing *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 145 (2d Cir. 2001)); *see Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 14

(1st Cir. 2006) ("Marks has assumed that the 'shall hear the parties' statement in 9 U.S.C. § 4 refers to a live evidentiary hearing. That may not be so. Rather, a 'hearing' on the papers may be all that is required."). Even when the making of an arbitration agreement is in issue, a district court may determine the existence of an arbitration agreement based on a paper record when either: (1) the evidentiary record reveals no genuine issue of material fact;[2] or (2) the parties were afforded a sufficient opportunity to argue and develop the evidentiary record."[3]

Consistent with this authority, this Court has determined the validity of an arbitration agreement without a hearing when: (1) the parties were granted leave to conduct arbitration-related discovery and submitted a thorough evidentiary record, *see Cotton v. GGNSC Batesville, LLC*, No. 3:13-cv-169, 2015 WL 1310034, at *1–2 (N.D. Miss. Mar. 24, 2015); and (2) there was no factual dispute and the sole issue before the Court was one of law, *see Dykes v. Cleveland Nursing & Rehab. Ctr.*, No. 4:15-cv-76, 2016 WL 426546, at *6 (N.D. Miss. Feb 3. 2016).

Here, while Cleveland Nursing requested an evidentiary hearing, Danny has not. Furthermore, as explained above, the parties have been granted leave to conduct arbitration-related discovery and have submitted a thorough evidentiary record. Accordingly, this matter may, and will, be decided on the paper record.

## III
## Factual Background

The relevant factual background is largely undisputed and was detailed in this Court's

---

[2] *See Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014) ("When it's apparent from a quick look at the case that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration."); *see also Insur. Newsnet.com, Inc. v. Pardine*, No. 1:11-cv-286, 2011 WL 3423081, at *2 (M.D. Pa. Aug. 4, 2011) ("[C]ourts have held that Section 4 does not require an evidentiary hearing where there is an absence of disputed facts.") (collecting cases).

[3] *See Titan, Inc.,* 241 F.3d at 145 ("Although the district court did not hold an evidentiary hearing, the parties filed multiple briefs and extensive evidence with the court over a two-year period."); *see also Armstrong*, 242 F. App'x at 959 (citing *Titan, Inc*. with approval).

previous order denying arbitration. *See* Doc. #13. For the purpose of this order, it is sufficient to state that in November 2012, James was admitted to the Cleveland Nursing facility and that at the time of his admission, Billy signed admission paperwork, including an arbitration agreement, on James' behalf. *See* Doc. #40-1. In signing the Admission Agreement, Billy represented that he was "authorized to do so and that [James] is mentally or physically unable to sign on his/her own behalf." Doc. #40-1. In the approximately eight months following James' admission, Billy signed numerous documents on James' behalf. *See* Doc. #54-1–Doc. #54-10. When Billy signed such paperwork, he, depending on the form, purported to do so as James' "Surrogate," "Agent and/or Legal Representative," "Designated Representative," "Financial Agent," "Family Member or Other Representative," "Resident Family Member," "Representative," or "Person/Legal Representative." *See* Doc. #54-1–Doc. #54-10; Doc. #40-1.

One of the later forms Billy signed was a "Designated Representative Statement" executed on November 12, 2012, which provides:

> I hereby declare that I am acting for James Dykes in providing information to establish the individual's eligibility for Medicaid because he/she is too aged or ill to provide information about his her/situation and to act responsibly for himself/herself. I will provide information to the best of my knowledge concerning the individual's situation. I understand that if I knowingly misrepresent the facts, I may be prosecuted for perjury and/or fraud.

Doc. #40-1 at 3909.

## IV
## Analysis

In its renewed motion, Cleveland Nursing argues the evidence establishes the existence of actual authority, and "[p]ublic policy concerns require arbitration of Plaintiffs' claims."

### A. Actual Authority Standard

"Generally, an agent cannot bind the principal to a contract unless the principal clothes

5

the agent with authority, whether actual or apparent." *Northlake Dev. L.L.C. v. BankPlus*, 60 So.3d 792, 795–96 (Miss. 2011). Actual authority, also known as real authority,[4] refers to "the actual power conferred" to an agent. *American Nat'l Ins. Co. v. Walters*, 93 So.2d 616, 630 (Miss. 1957).

> "Under Mississippi law, an agent's '[a]ctual authority may be express or implied.'" *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venezuela*, 575 F.3d 491, 500 (5th Cir. 2009) (*quoting Migerobe, Inc. v. Certina USA, Inc.*, 924 F.2d 1330, 1336 (5th Cir. 1991)). "It is deemed express if granted in either written or oral specific terms." *Id*. According to the Restatement (Third) of Agency, which Mississippi courts consult, *see id*., "[a]ctual authority ... is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf." Restatement (Third) of Agency § 3.01 (2006).

*Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 177 (5th Cir. 2016). "[I]mplied authority is actual authority proved circumstantially, which means it is proved on the basis of a principal's conduct other than written or spoken statements that explicitly authorize an action." Restatement (Third) of Agency § 2.02 cmt. c.

"The burden of proving [actual] authority rests upon the person asserting the agency and relying upon said authority." *Thorp Finance Corp. v. Tindle*, 162 So.2d 497, 500 (Miss. 1964). To this end, as a general rule, "[n]either agency nor the scope thereof can be proven by the declaration of the alleged agent." *Columbus & Greenville Ry. Co. v. Miss. Clinic*, 120 So. 203, 205 (Miss. 1929). However, in *Gross*, the Fifth Circuit held that, under Mississippi law, the *sworn* deposition of a purported agent is admissible to prove agency or the scope of actual agency. 817 F.3d at 179–80.

### B. Actual Authority Analysis

Cleveland Nursing, relying primarily on the Fifth Circuit's opinion in *Gross*, argues that

---

[4] *Meyer v. Baldwin*, 52 Miss. 263, 265 (1876).

Billy's acts of signing the various forms provide sufficient evidence of actual authority. Doc. #54; *see* Doc. #45. In essence, Cleveland Nursing seeks to establish actual authority by relying only on the conduct of the purported agent – Billy.

The Restatement provision on which *Gross* relied makes clear that, while "[a]n agent's actions establish the agent's *consent* to act on the principal's behalf," "[a]ctual authority is a consequence of a *principal's* expressive conduct toward an agent ...." Restatement (Third) of Agency § 2.01 at cmt. c (2006) (emphases added). Put differently, while an agent's actions may show an intent to act as an agent, only conduct of an alleged principal may establish actual authority. Thus, it is a "well-established tenet that an agent cannot create his own authority to represent a principal." *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996); *see Cont'l Cas. Co. v. Holmes*, 266 F.2d 269, 278 (5th Cir. 1959) ("It is elementary that actual authority can only be created 'by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him to act on the principal's account.'") (quoting Restatement (Second) of Agency § 26 (1956)).[5]

While *Gross* recognized that the sworn statements of a purported agent may be used to prove agency, it did nothing to alter the rule explained above that actual authority may only be established through conduct of the principal. Thus, while an alleged agent may give a sworn statement as to the alleged existence of an agency relationship, such a statement will not prove the existence of actual authority unless it proves manifestations of the principal to the agent

---

[5] *See Karavos Compania Naviera S.A. v. Atlantica Export Corp.*, 588 F.2d 1, 10 (2d Cir. 1978) ("[T]he authority of an agent, and its nature and extent, can only be established by tracing it to its source in some word or act of the alleged principal. The agent cannot confer authority upon himself or make himself agent merely by saying he is one.") (alterations omitted); *Taylor v. Ramsay-Gerding Const. Co.*, 196 P.3d 532, 536 (Ore. 2008) ("An agent's actions, standing alone and without some action by the principal, cannot create authority to bind the principal."); *Parks v. MBNA Am. Bank*, 204 S.W.3d 305, 313 (Mo. Ct. App. 2006) ("[A]n agent cannot create his own authority ...."); *W. Concord Conservation Club, Inc. v. Chilson*, 306 N.W.2d 893, 897 (Minn. 1981) ("[N]o agent by his own act can create evidence of authority ....").

7

"that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf." 817 F.3d at 177.

Here, the only statement made by Billy which even approaches the level of "sworn" is the statement on the Medicaid form, made under penalty of perjury, that Billy was "acting for James Dykes in providing information to establish the individual's eligibility for Medicaid because he/she is too aged or ill to provide information about his/her situation and to act responsibly for himself/herself." Doc. #40-1 at 3909. However, this statement, which was made approximately seven months after James' admission and relates to Medicaid reporting, offers no evidence of specific manifestations of James to Billy which could have reasonably led Billy to believe that, at the time of admission, he was authorized to act as James' agent. Similarly, even if admissible, Billy's unsworn and unexplained signatures as James' "Legal Representative" also fail to establish the required manifestations of James. *See Compere's Nursing Home, Inc. v. Estate of Farish ex rel. Lewis*, 982 So.2d 382, 383–84 (Miss. 2008) (affirming finding of lack of agency where resident's nephew signed admissions paperwork warranting that he had "authority, either express or implied or apparent, to act as agent for the resident and to execute this agreement on resident's behalf"); *see also Curto v. Illini Manors, Inc.*, 940 N.E.2d 229, 234 (Ill. Ct. App. 2010) ("[A] spouse's signature on an arbitration agreement as the resident's representative does not demonstrate actual authority to bind a nursing home resident to the agreement. An actual agency relationship is controlled by the express authorization of the principal or implied conduct of the principal and agent. The principal's conduct is crucial to establish actual authority.").

In sum, Cleveland Nursing has introduced evidence that Billy attempted to act as James' agent and made representations to this effect. At most, these representations and acts show that Billy believed he possessed actual authority to execute the admissions paperwork, including the

admissions agreement. However, such acts or statements do not establish the manifestations which allegedly created this authority. Because actual authority may not be established in the absence of manifestations from the purported principal sufficient to form a reasonable belief that authority is created, the Court must conclude that Billy lacked actual authority to bind James to arbitration.

### C. Public Policy

Finally, Cleveland Nursing argues that a finding of lack of actual authority would be tantamount to improperly requiring a formal legal device because "without a power of attorney or valid surrogacy document, a family representative for a [sic] incapacitated loved one could not complete *any* documentation on their family member's behalf." Doc. #41 at 8. This Court disagrees. Nothing in finding a lack of actual authority here compels such a result.

Under *Gross*, family members are free to orally (or otherwise) grant authority to their loved ones to execute documents on their behalf. 817 F.3d at 177–78. Under the precedent set forth above, a nursing home remains free to allow family representatives claiming actual authority to execute admissions paperwork on behalf of an incapacitated loved one. Later, should either party attempt to avoid such an agreement, the other party remains free to illicit sworn testimony from the purported agent setting forth the manifestations, if any, of the alleged principal which created the actual authority.[6]

Furthermore, in the absence of a person with a valid claim to actual authority, family members and nursing homes may rely on a healthcare surrogate to execute paperwork by, in the absence of the prospective resident's primary physician, finding a physician willing to undertake

---

[6] Based on the docket, Cleveland Nursing declined to take Billy's deposition though authorized to conduct arbitration-related discovery.

9

the responsibility and declare the prospective resident incapacitated. *See* Miss. Code Ann. § 41-41-211(1)–(2) (family member may act as surrogate upon primary physician's finding of incapacity); Miss. Code Ann. § 41-41-203(o) ("'Primary physician' means a physician designated by an individual or the individual's agent, guardian, or surrogate, to have primary responsibility for the individual's health care or, in the absence of a designation or if the designated physician is not reasonably available, a physician who undertakes the responsibility.").

Thus, because multiple avenues remain for a nursing home to admit an incapacitated individual without a formal legal device, Cleveland Nursing's "public policy" argument does not compel a finding of actual authority here.

## V
## Conclusion

For the reasons above, Cleveland Nursing's renewed motion to compel arbitration [40] is **DENIED**.

**SO ORDERED**, this 30th day of August, 2017.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**